## ANDREWS v. GEORGE M. SHUTT & CO.
### No. 5947.

Circuit Court of Appeals, Fifth Circuit.
Oct. 29, 1930.

W. W. Dykes, of Americus, Ga. (Hollis Fort and W. W. Dykes, both of Americus, Ga., on the brief), for appellant.

R. L. Maynard and G. C. Webb, both of Americus, Ga., for appellee.

Before BRYAN, FOSTER and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee, a partnership, against the appellant as executrix under the will of D. R. Andrews, deceased, to recover the alleged amount of a balance claimed to be due to appellee for losses incurred, for United States revenue taxes paid, and for commissions under contracts entered into on the New York Cotton Exchange by the appellee, pursuant to instructions or orders of D. R. Andrews, for the purchase or sale of cotton for future delivery. The appellant set up as a defense that all the transactions out of which the claim asserted arose were gambling contracts, in that they were entered into and carried on with the full understanding and agreement between appellee and the deceased that no actual cotton was to be delivered or received, but that settlements were to be made on the basis of differences between the contract price and the market price on the dates of the closing of the transactions. At the conclusion of the evidence, the court granted a motion of the plaintiff that the jury be directed to find a verdict for the plaintiff for the amount sued for. That action of the court is assigned as error.

The just mentioned ruling is not sustainable, if there was substantial evidence warranting the jury in finding that the intention of both the parties to the transactions mentioned were as alleged by the appellant.

There was evidence to the following effect: The transactions out of which the claim asserted arose covered the period from October, 1924, to June, 1926, some of those transactions being contracts for the purchase of cotton for future delivery, some for the sale of cotton for future delivery, and the closing out of such contracts. Mr. Andrews was required to put up margins to protect appellee from loss. Some of the contracts were closed out upon the failure of Andrews to comply with demands for additional margin. The testimony of a member of the appellee firm indicated that during several years prior to October, 1924, there had been similar dealings between Mr. Andrews and the appellee. In none of those dealings before or after October, 1924, was there any delivery or acceptance of actual cotton. Throughout the time of the dealings between appellee and Mr. Andrews each contract was settled or closed on the basis of the difference between the purchase and sale price or the sale and purchase price. On the approach of what was called "notice day," the appellee, without any inquiry or request from Mr. Andrews, wired the latter, calling his attention to notice day, and requesting instructions, with the result that, before the arrival of notice day, and pursuant to instructions given by Mr. Andrews, the then existing maturing contract was closed out and another similar contract was made for future delivery in a later month. The testimony of the member of the appellee firm who personally handled for his firm the transactions in question contained

the statement: "We probably thought he would settle on marginal differences." A witness testified that, while the transactions in question were pending, Mr. Andrews, who lived at Americus, Ga., and was a farmer engaged in growing cotton, said that he was gambling on the cotton market.

When the inquiry is whether a contract in question is or is not a wagering one by reason of both parties intending to settle by the payment or receipt of market differences, the language of the contract formally entered into by the Cotton Exchange broker for his customer is not controlling, where evidence as to the acts and correspondence of the parties while the contract was in existence, and as to their course of dealings under that contract and under other similar ones previously existing between them, indicates that the real intention of both parties as to the manner of settling or closing such a contract was different from the intention formally expressed. The intention of both parties that the commodity mentioned was not to be received or delivered, but that the transaction should be settled by the payment of the difference between the contract price and the market price at or before the time fixed in the formal contract entered into by the broker for his customer, may be established by evidence as to the circumstances attending the transactions of the parties under the contract—as to what they did and said in connection with the settling or closing of the transaction. Where there is evidence as to whether both parties did or did not intend that the contract in question would result in the actual delivery of the commodity dealt with, and a phase of the evidence furnishes substantial support for a finding that it was contemplated or intended by both parties that there would be no actual delivery, the question is one of fact for the determination of the jury. James v. Clement (C. C. A.) 223 F. 385; Alex Hyman & Co. v. Hay (C. C. A.) 277 F. 898; Holbrook v. Shepard (C. C. A.) 279 F. 193; Sharp v. Stalker, 63 N. J. Eq. 596, 52 A. 1120; Benson-Stabeck Co. v. Reservation Farmers' Grain Co., 62 Mont. 254, 205 P. 651; Clark v. McNeill (C. C. A.) 25 F.(2d) 247.

We think the foregoing statement sufficiently indicates that evidence adduced as to the uniform course of dealings between the parties under successive contracts between them, and as to what was said and done with reference to settling or closing out transactions entered into, had a substantial tendency to prove that both parties contemplated that there would be no actual delivery of cotton as a result of any of the transactions in question, and that the understanding of both parties to those transactions was that they would be closed by the receipt or payment of the difference between the contract price and the market price at the closing out time. We conclude that the evidence was such as called for a submission of the issues to the jury, and that the above-mentioned ruling was erroneous. Because of that error the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.